**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ALEXANDR TSVETTSIKH, *individually and on behalf of all others similarly situated,*

      Plaintiff,

      v.

WBM LLC d/b/a WBM INTERNATIONAL,

      Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

    Plaintiff ALEXANDR TSVETTSIKH (hereinafter, "Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, hereby brings this Class Action Complaint against Defendant, and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel:

<u>**NATURE OF THE ACTION**</u>

    1. This lawsuit involves the manufacture, marketing, and sale of Himalayan salt products by WBM LLC ("Defendant"). Defendant advertised, marketed, and labeled its products as effective in treating and preventing many health problems and diseases despite the absence of

FDA approval. Defendant refers to scientific studies and falsely indicates that they support Defendant's claims.

2.   WBM's marketing emphasized the lack of side effects from WBM's Himalayan Salt Products, inducing consumers to use those products instead of genuine, effective drugs and medical devices.

3.   As part of its extensive and comprehensive marketing campaign nationwide (including in New York State), Defendant actively promotes the preventative and curative capabilities of its Himalayan Glow® Salt Lamps and Salt Candle Holders products (herein referred to as the "Products," as such term is defined in Paragraph 30 below), making numerous and overlapping claims about the properties of the Products.

4.   Defendant's Products have negligible medical capability. By making false, deceptive and misleading statements to consumers, Defendant has deceived thousands of consumers into purchasing its Products.

5.   At all material times hereto, Plaintiff and other consumers have been deceived into spending significant amounts of money on Products that do not benefit consumers as represented. Plaintiff and other members of the Class (as defined below), have been harmed by Defendant's fraudulent misrepresentations on the efficacy of its Products.

6.   At all material times hereto, Plaintiff and other consumers have been deceived into refraining from using effective medical devices, medication, dehumidifiers, and dust mite removers, relying instead on Defendant's claims that their products were superior medical devices with fewer side effects.

7.   As shown in **Exhibit A**, the Products' supposed medical prowess is central to the marketing of the Products, and false representations to that effect are clearly and prominently

displayed on Defendant's website, retailers' websites, and the Products' packaging, where it cannot be missed by consumers.

8.  Plaintiff TSVETTSIKH was exposed to Defendant's concerted advertising campaign when he bought his salt lamp Product online.

9.  Defendant has unjustly profited in the lucrative market for natural and safe remedies and medical devices by labeling its Products deceptively and selling them to consumers who sought to purchase products that can cure their health problems without side effects and who were willing to pay for such products.

10. This lawsuit seeks redress for the deceptive manner in which Defendant has and continues to market its Products to the general public. Plaintiff brings this proposed consumer class action individually and on behalf of all other persons similarly situated, who, from the applicable limitations period up to and including the present ("Class Period"), purchased WBM Salt Products for use and not resale.

11. Plaintiff seeks to secure, among other things, equitable and declaratory relief, restitution, and alternative damages, for similarly situated United States purchasers, against Defendant, for (1) deceptive acts or practices in violation of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, *et seq.* ("NY GBL"); (2) Breach of Express Warranty; (3) Negligent Misrepresentation and; (4) Unjust Enrichment.

12. In addition to damages, Plaintiff is seeking an Order requiring Defendant to cease packaging, marketing and advertising salt Products with misleading statements about their medicinal and physiological capabilities.

13. Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

## JURISDICTION AND VENUE

14. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

15. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

16. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

17. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

18. This Court has personal jurisdiction over Plaintiff TSVETTSIKH because Plaintiff TSVETTSIKH submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to New York Statute N.Y. CVP. Law § 302, because it conducts substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiff TSVETTSIKH's claims arise out of Defendant operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendant's acts and omissions outside this state. Additionally, this court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York

State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff*

20. Plaintiff TSVETTSIKH is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Kings County. During the Class Period, Plaintiff TSVETTSIKH purchased a Himalayan Glow® Salt Lamp for personal consumption within the State of New York. Plaintiff TSVETTSIKH purchased the Product from Amazon.com. The purchase price was approximately $24.95 for an individual WBM Himalayan 8-9 in. Ionic Crystal Natural Salt 8 to 11 lbs. Lamp (the "Product"). Plaintiff TSVETTSIKH purchased the Product at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein. At the time of purchase, Plaintiff TSVETTSIKH did not know that the Salt Lamp was incapable of dehumidifying the air, removing dust mites, curing depression, enhancing his immune system, helping his headaches enhancing his serotonin levels, and reducing his vulnerability to colds and flu. Plaintiff TSVETTSIKH would not have purchased the Product had he known that the medical claims were false and deceptive. Plaintiff TSVETTSIKH was reasonably misled by Defendant's mischaracterization of the capabilities of its Product and did

5

not receive the benefit of his bargain. Plaintiff TSVETTSIKH suffered injury in fact and lost money as a result of Defendant's deceptive, false and misleading practices as described herein.

***Defendant***

21. Defendant WBM LLC, doing business as WBM International, is a corporation organized under the laws of New Jersey with its headquarters registered at 54 Highway 12, Flemington, NJ 08822 and its main offices located at 487 Hillside Ave., Hillside, NJ 07205. WBM is a manufacturer of Pakistani products with operations in the USA, Pakistan, and China.

22. WBM develops, markets and sells a line of salt-based lamps and candle holders products under the "Himalayan Glow®" brand name throughout the United States.

23. WBM owns, manufactures and distributes Himalayan Glow® Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products at issue. The product labels for the Products, relied upon by Plaintiff and the Class, was prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents with misrepresentations alleged herein about the medical, air dehumidifying, and dust mite removing properties of the Products. The product labels were designed to encourage consumers to purchase the Products and reasonably misled Plaintiff and the Class into purchasing the Products.

24. Plaintiff alleges that, at all times relevant herein, WBM and its subsidiaries, affiliates, and other related entities, as well as its respective employees, were the agents, servants and employees of WBM, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors who delivered and sold the Products, as well as their respective employees, also were WBM's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment. In addition,

6

Plaintiff alleges that, in committing the wrongful acts alleged herein, WBM, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that WBM participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

25. Whenever reference in this Complaint is made to any act by WBM or its subsidiaries, affiliates, distributors, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of WBM committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of WBM while actively engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

### Himalayan Glow® Products

26. Salt lamps are lamps that use salt to cover a light bulb. Salt candle holders are candle holders carved out of a piece of salt. As such, salt lamps and salt candle holders are not medical devices.

27. The light from the lamp or candle is colored by the salt, and light and heat from the light bulb or flame dry out the salt, releasing absorbed moisture back into the air. This prevents humidity from melting the salt lamp or salt candle holder. The light and heat of the Products cannot produce enough ions to have any impact on human health.

28. In contrast to the salt lamp design, commercial air ionizers use high voltage electricity to ionize air molecules with a negative electrical charge. They are used to counter static build-up of positive ions in nonconductive electrical equipment and to reduce dust and dust-borne

7

diseases. The Products do not produce a substantial amount of ions and do not produce enough ions to have an effect similar to commercial air ionizers. In any event, even commercial air ionizers that actually produce large numbers of negative ions cannot provide the health benefits WBM claims regarding the salt Products.

29. Defendant manufactures, distributes, markets, advertises and sells the Products. The Products are available at household goods stores and other retail outlets throughout the United States, including online retailers such as Amazon.com.

30. Plaintiff and the Class have purchased the Products listed below (together, the Products"), which are sold on Defendant's website http://wbminternational.com/, as well as on amazon.com and through other retailers:

| Item | UPC Number | Website |
|------|-----------|---------|
| WBM Himalayan Glow Hand Carved Natural Crystal Himalayan Salt Lamp with Genuine Neem Wood Base, Bulb and Dimmer Control, 8-to-9-Inch, 8-to-11-Pounds | 858560002022 | https://www.amazon.com/gp/product /B001892AX2/ref=s9_acsd_al_bw_c _x_2_w |
| | | http://wbminternational.com/salt-lamps-1002 |
| Hand Carved LED Multi Colour Lamp | 818581010512 | http://wbminternational.com/salt-/lamps-900 |
| Hand Carved Natural Crystal Lamp | 858560002374 | http://wbminternational.com/salt-lamps-1003 |
| Hand Carved Natural Crystal Lamp | 858560002398 | http://wbminternational.com/salt-lamps-1005 |
| Hand Carved Natural Crystal Lamp | 858560002312 | http://wbminternational.com/salt-lamps-1451 |
| Hand Carved Natural Crystal Lamp | 858560002015 | http://wbminternational.com/salt-lamps-1001 |
| Hand Carved Natural Crystal Lamp | 858560002404 | http://wbminternational.com/salt-lamps |
| Hand Carved Natural Crystal Lamp | 818581011373 | http://wbminternational.com/salt-lamps-1000 |
| Lantern w/salt Crystal Chunks | 818581012530 | http://wbminternational.com/lantern-w-salt-crystal-chunks |
| Natural Bamboo Basket w/salt Chunks | 818581012691 | http://wbminternational.com/natural-bamboo-basket-w-salt-chunks |

| | | |
|---|---|---|
| Natural Carved Lamp W/Aroma Oil | 858560002596 | http://wbminternational.com/salt-lamps-1401 |
| Oval Basket Lamp w/salt Crystal Chunks | 818581012677 | http://wbminternational.com/oval-basket-lamp-w-salt-crystal-chunks |
| WBM-1313 Iron Picket Salt lamp--L | 818581010710 | http://wbminternational.com/salt-lamps-1313 |
| WBM-901 USB Salt lamp with Adapter | 818581010529 | http://wbminternational.com/salt-lamp-901 |
| Hand Carved Natural Candle (CUBE) | 818581010031 (listed as 20818581010035) | http://wbminternational.com/wbm-himalayan-light-3050-natural-air-purifying |
| Hand Carved Natural Candle Holder | 818581010277 | http://wbminternational.com/wbm-3002a-himalayan-pink-salt-ionic-natural-candle |
| Hand Carved Natural Candle Holder (2 hole) | 818581012554 | http://wbminternational.com/wbm-himalayan-light-3003-natural-air-purifying |
| Hand Carved Natural Candle Holder (BALL) | 818581010086 | http://wbminternational.com/wbm-himalayan-light-3027-natural-air-purifying |
| Hand Carved Natural Candle Holder (CYLINDER) | 818581010109 | http://wbminternational.com/wbm-himalayan-light-3023-natural-air-purifying |
| Hand Carved Natural Candle(Apple) | 818581010093 | http://wbminternational.com/wbm-himalayan-light-3017-natural-air-purifying |
| WBM-3002A Natural Candle | 858560002589 | http://wbminternational.com/wbm-3002a-himalayan-pink-salt-ionic-natural-candle-179 |
| WBM-3002B Light Air Purifying | 818581011397 | http://wbminternational.com/wbm-3002b-himalayan-light-natural-air-purifying |
| WBM-3053 Natural Air Purifying | 818581010048 | http://wbminternational.com/wbm-himalayan-light-3053-natural-air-purifying |
| WBM-3054 Natural Air Purifying | 818581010055 | http://wbminternational.com/wbm-himalayan-light-3054-natural-air-purifying |
| Natural Salt Basket Lamp | 858560002008 | http://wbminternational.com/salt-lamps-1301b |
| Natural Salt Basket Lamp | 858560002367 | http://wbminternational.com/salt-lamps-1301 |
| Natural Salt Bowl Lamp | 858560002343 | http://wbminternational.com/salt-lamps-1326 |
| Picket Frame lamp w/Salt Chunks | 818581011304 | http://wbminternational.com/salt-lamps-1333 |
| Pillar Lamp w/Salt Crystal Chunks | 818581011298 | http://wbminternational.com/salt-lamps-1332 |
| WBM-1328 Fire Bowl Salt Lamp | 858560002336 | http://wbminternational.com/salt-lamps-1328 |

31. Defendant actively promotes the ionizing and medical properties of the Products, claiming that the lamps' benefits "include migraine headache relief, [enhance] serotonin levels in the blood, reduce the severity of asthma attack, immune system enhancement, and reduce

vulnerability to colds and flu. There is hard science to suggest that these clams are true." Defendant claims depression "may be safely treated with negative ion therapy" and that its Products provide negative ions to induce this effect. *See* **Exhibit A.** Defendant also claims that its products dehumidify the air and remove dust mites.

32. Defendant's claims are false, misleading and deceptive because its Products have negligible medical capability. The Products do not provide sufficient quantity of air ionization necessary to affect human health or mood.

33. Even if Defendant's Products ionized the air as much as an industrial ionizer using high voltage, its medical claims about the effect of its Products would be false, because ionization does not cause "migraine headache relief, [e]nhance serotonin levels in the blood, reduce the severity of asthma attack, immune system enhancement, and reduce vulnerability to colds and flu."

34. Even if Defendant's Products ionized the air as much as an industrial ionizer using high voltage, it would not operate as a dehumidifier or dust mite remover. If they do not release as vapor as much water as they absorb, Defendant's products melt, creating a dangerous pool of corrosive salt water around the location of the Salt Lamps' electrical wire. Over the medium and long term, Defendant's Products humidify the air as much as they dehumidify it by releasing back all captured moisture.

35. Experiments of the effect of ions on human mood have shown effects in humans when ion generators produce ions at high rates. To market its salt lamps, on its website WBM references studies including Michael Terman's studies, *see* **Exhibits B** and **C**.[1] Those studies

---

[1] *See* Terman, M., Terman, J. S., & Ross, D. C. (1998). A Controlled Trial of Timed Bright Light and Negative Air Ionization for Treatment of Winter Depression. *Archives of General Psychiatry*, 55(10), 875-882 and Terman, M., & Terman, J. S. (2006). Controlled Trial of Naturalistic Dawn Simulation and Negative Air Ionization for Seasonal

showed an effect on human mood when the generators produced trillions of ions per second, but either small or no results at 170 billion ions per second.

36. Defendant advertises its Products as having healing properties, with ion generation being the supposed mechanism by which the lamp acts on humans. Defendant advertises that its salt lamps can "increase the negative ions in the air up to 300%", above the 100-4000 negative ions per cubic centimeter it claims are naturally present in the air. *See* **Exhibits B** and **D.** In fact, Defendant's products cannot increase the negative ions in the air by any appreciable amount, and in any event cannot approach the magnitude of ionization needed to effect humans. No quantity of ions would produce the medical effects Defendant claims, and air ionizers do not effectively dehumidify the air.

37. Even if Defendant believed its false claims about the ionizing effect of its Products, it knowingly and deliberately misled and deceived consumers in the way it referred to scientific studies and implied that they supported Defendant's claims about its Products. Defendant misled consumers into believing that those studies were evidence supporting the curative power of the Products as ion generators. In truth, Defendant's Products do not have the ionizing power claimed, but even if they did, that level of ionization would not be enough to effect humans, even with respect to conditions that can actually be affected by high levels of negative ions. The studies Defendant relies on do not provide a basis for believing that the Products can measurably affect humans, even if Defendant's false representations about the ionizing power of its Products were true. The studies demonstrate that ions have some effect on mood at very high levels, but Defendant's claims about its Products' ionization capabilities would not make them powerful enough to do this, even if they were true.

---

Affective Disorder. *The American journal of psychiatry*, 163(12), 2126-2133, using 4.5 trillion and 45 trillion ions per second, respectively, as the high does and both using 1.7 x 10^11 as the low dose.

38. Even if Defendant's Products were powerful enough to affect humans, Defendant falsely misleads consumers into believing that studies show that negative ions are an effective means to provide "migraine headache relief, [e]nhance serotonin levels in the blood, reduce the severity of asthma attack, immune system enhancement, and reduce vulnerability to colds and flu." The studies Defendant deceptively refers to do not suggest that any dose of negative ions can provide those benefits at all.

39. In addition to their failure to provide medical benefits, the Products dangerously discourage consumers from using effective products for their health because consumers rely on Defendant's representations about the effectiveness of the Products instead of pursuing effective treatment.

40. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiff's and the other Class members' reliance upon Defendant's misleading and deceptive representations may be presumed. The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

41. Reasonable consumers, such as Plaintiff and the Class, rationally expect a product that claims it produce many negative ions to perform as promised and not produce fewer ions than are needed to affect human health. Reasonable consumers also rationally expect a product that claims "hard science" has purportedly proven to provide "migraine headache relief, [e]nhance serotonin levels in the blood, reduce the severity of asthma attack, immune system enhancement, and reduce vulnerability to colds and flu" and "safely [treat]" depression to actually provide those benefits.

42. Reasonable consumers, such as Plaintiff and the Class, rationally expect a product that claims it dehumidifies the air to actually dehumidify the air and be safe for use in humid environments.

43. Reasonable consumers, such as Plaintiff and the Class, rationally expect a product that claims it removes dust mites to actually do so.

44. The presence of the statements on the labeling and advertising of the Products referring to ion production, health benefits, dehumidification, and mite removal are false, misleading and likely to deceive a reasonable consumer. Defendant's statements referring to studies about ion production and health benefits are similarly false, misleading and likely to deceive a reasonable consumer.

45. Plaintiff and the Class reasonably relied to their detriment on Defendant's false and misleading misrepresentations about the Products' ion generation, supposed health benefits, dehumidification, and dust mite removal.

46. Reasonable consumers (including Plaintiff and the Class) must and do rely on manufacturers of products such as Defendant to honestly report on their products' capabilities, particularly when manufacturers such as Defendant refer to scientific studies as the basis for their claims. This is especially true when the products supposedly provide benefits relating to human health, which includes claims about air ionization, dehumidification, removing dust mites, and medical effects such as treatment of depression, "migraine headache relief, [e]nhance serotonin levels in the blood, reduce the severity of asthma attack, immune system enhancement, and reduce vulnerability to colds and flu." Companies such as Defendant intend and know that consumers rely upon labeling statements and advertised claims about scientific studies in making their purchasing decisions. Such reliance by consumers is also eminently reasonable, since

companies are prohibited from engaging in deceptive acts or practices in the conduct of any business, trade or commerce under New York state law.

47. While Defendant labeled and advertised that its Products dehumidify the air, remove dust mites, and ionize the air, thereby providing numerous medical benefits, the Products fail to perform as promised. The misrepresentation was significant and material given the prominent claims about producing many negative ions on the front of the Product packaging and throughout Defendant's marketing, including its WBM website[2] and on Amazon.com, where Plaintiff TSVETTSIKH bought his Product.[3]

48. On Amazon.com, Plaintiff TSVETTSIKH's Product is falsely represented as having medical benefits and emitting negative ions that improve human health as follows:

> The Himalayan Natural Crystal Salt Lamp also works as an air purifier. When lit, the lamp emits negative ions that fight against positively charged particles that cause you to feel stuffy and sluggish. The lit salt crystal clears the air naturally of allergens like smoke, pet dander, pollens, and other air pollutants. It dilutes odors so that you can breathe easier. People with asthma often find it helpful in reducing their symptoms.

https://www.amazon.com/gp/product/B001892AX2/ref=s9_acsd_al_bw_c_x_2_w

49. Defendant knew that it made representations that the Products "release negative ions," provide "migraine headache relief, [e]nhance serotonin levels in the blood, reduce the severity of asthma attack, immune system enhancement, and reduce vulnerability to colds and flu," and that "Human mood disorders (depressions) … may be safely treated with negative ion therapy," as those statements appear on the Defendant's website. Defendant also knew that the claims were false and misleading, because the Products do not release enough ions to have an effect on humans and no amount of ions would have most of the particular medical effects claimed. Upon information and belief, Defendant retains expert chemists, other scientists, and

---

[2] *See* http://wbminternational.com/ and **Exhibits A**, **B**, and **D**.
[3] *See* **Exhibit E**.

attorneys, and thus had the ability to know, and did know, that the Products are incapable of providing the claimed benefits and that Defendant's claims about the studies it refers to are false.

50. As a result of Defendant's deception, consumers – including Plaintiff and members of the proposed Class – have purchased Products that claim to produce many negative ions and thereby have numerous medical benefits supported by "hard science" in reliance on Defendant's labels. Moreover, Plaintiff and Class members have paid a premium for the Products over air ionizers, medical devices, dehumidifiers, and dust mite removers sold on the market.

**Plaintiff Relied on Defendant's Claims and Was Injured**

51. Within the last twelve months, Plaintiff was attracted to the Products because he preferred to consume and use effective and powerful air ionizers, humidifiers, dust mite removers, and medical products. Plaintiff believed that the Products performed as promised by Defendant's packaging and marketing campaign, as reflected on Amazon.com, and purchased them for their advertised benefits. The Products, with their deceptive claims on the Product packaging and advertising, had no value to Plaintiff.

52. New York has placed requirements on companies that are designed to ensure that the claims they are making about their products to consumers are truthful and accurate.

53. Defendant's labeling and advertising of the Product violates New York consumer protection laws against deceptive acts and practices in the conduct of business.

54. Although Defendant marketed the Products as air ionizers that could reduce humidity, remove dust mites, and produce many negative ions and thereby have numerous medical benefits supported by "hard science," it failed to also disclose material information about the Products; the fact that they could not produce many negative ions, that any ions produced were not of a quantity or nature to provide the promised health benefits, and that the Product could not

dehumidify the air or remove dust mites. This non-disclosure – while at the same time branding the Product as something that produces many negative ions, causes numerous specific medical benefits, dehumidifies the air, and removes dust mites – was deceptive and likely to mislead a reasonable consumer.

55. Plaintiff and Class members did, and a reasonable consumer would, attach importance to whether Defendant's Product is deceptive or misleading and therefore unlawful.

56. Plaintiff and Class members did not know, and had no reason to know, that the Product was not capable of producing many negative ions, that negative ions were not capable of causing numerous specific medical benefits, that the Product cannot dehumidify the air and is dangerous if used in high humidity, and that the Product does not remove dust mites.

57. Defendant's Product labeling was a material factor in Plaintiff's and Class members' decisions to purchase the Products. Relying on Defendant's Product labeling and misleading website, Plaintiff and Class members believed that they were getting Products that were superior to other air ionizers, medical devices, dehumidifiers, and dust mite removers. Had Plaintiff and the Class known Defendant's Products could not function as promised, they would not have purchased them.

58. Defendant's Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic Product packaging practice.

59. At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products were deceptive as set forth herein, and would not have bought the Product had they known the truth about it.

60. As a result of Defendant's misrepresentations, Plaintiff and thousands of others throughout the United States purchased the Products.

61. Plaintiff and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct in that they purchased a Product with false and deceptive labeling and paid premium prices they otherwise would not have paid over other comparable products.

## CLASS ACTION ALLEGATIONS

62. Plaintiff seeks relief in his individual capacity and as representative of all others who are similarly situated. Pursuant to Rule 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff seek certification of the following class:

> The New York Class
> All persons who have made retail purchases of the Products in New York,
> as set forth herein, during the applicable limitations period, and/or such
> subclasses as the Court may deem appropriate.

63. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

64. Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

65. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

66. **Numerosity:** The Class is so numerous that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff, but it is clear

that the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive nationwide distribution and sales network. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

67. **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. All Class members were exposed to Defendant's deceptive and misleading advertising and marketing claim that the Products produce many negative ions and thereby have numerous medical benefits supported by "hard science" because that claim was on the manufacturer's website. Furthermore, common questions of law or fact include:

    a.   whether online advertisements that the Products produce many negative ions and thereby have numerous medical benefits are supported by "hard science";

    b.   whether online advertisements that the Products dehumidify the air are true;

    c.   whether online advertisements that the Products remove dust mites are true;

    d.   whether Defendant engaged in a marketing practice intended to deceive consumers;

    e.   whether Defendant deprived Plaintiff and the other Class members of the benefit of the bargain because the Product purchased was different than what Defendant warranted;

    f.   whether Defendant deprived Plaintiff and the other Class members of the benefit of their bargain because the Product they purchased had less value than what was represented by Defendant;

g.  whether Defendant failed to update Plaintiff and the other Class members regarding the Product's inability to fulfill its medical claims.

h.  whether Defendant caused Plaintiff and the other Class members to purchase a substance that was other than what was represented by Defendant;

i.  whether Defendant caused Plaintiff and the other Class members to purchase Products that are incapable of producing many negative ions and thereby having numerous medical benefits supported by "hard science."

j.  whether Defendant caused Plaintiff and the other Class members to purchase Products that are incapable of dehumidifying and dangerous if operated in a humid environment;

k.  whether Defendant caused Plaintiff and the other Class members to purchase Products that are incapable of removing dust mites;

l.  whether Defendant has been unjustly enriched at the expense of Plaintiff and other Class members by its misconduct;

m.  whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

n.  whether Defendant should be barred from marketing that the Products are dehumidifiers, dust mite removers, and produce many negative ions and thereby have numerous medical benefits supported by "hard science."

68. Defendant engaged in a common course of conduct in contravention of the laws sought to be enforced by Plaintiff individually and on behalf of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common

questions that dominate this action. Moreover, the common questions will yield common answers.

69. **Typicality:** Plaintiff's claims are typical of those of other Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff purchased Defendant's Product and sustained similar injuries arising out of Defendant's conduct in violation of common law and New York State law. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class members were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

70. **Adequacy:** Plaintiff will fairly and adequately represent and pursue the interests of the Class and has retained competent counsel experienced in prosecuting New York class actions. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Class. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class members.

71. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of Class members' claims and the absence of material or dispositive differences in the statute and common laws upon which the claims are based when such claims are grouped as proposed above and below, the New York Class will be easily managed by the Court and the parties.

72. **Declaratory and Injunctive Relief:** The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

73. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

74. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

75. Further, in the alternative, the Class may be maintained as a class action with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

## CAUSES OF ACTION

### COUNT I

### INJUNCTION AND DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

76. Plaintiff TSVETTSIKH realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

77. Plaintiff TSVETTSIKH brings this claim on behalf of himself and the Class for an injunction and damages for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL").

78. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

79. To establish a claim under NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

80. Any person who has been injured by reason of any violation of the NY GBL may bring an action in their own name to enjoin such unlawful act or practice, an action to recover

their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

81. The practices employed by Defendant, whereby Defendant advertised, promoted, and marketed that its Products are dehumidifiers and dust mite removers that produce many negative ions and thereby have numerous medical benefits supported by "hard science" were unfair, deceptive, and misleading to Plaintiff TSVETTSIKH and other Class members and in violation of NY GBL § 349 for, inter alia, one or more of the following reasons:

    a. Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Products, which did, or tended to, mislead Plaintiff and the Class about facts that could not reasonably be known by them;

    b. Defendant knowingly and falsely represented and advertised that the Products: a) dehumidify the air, b) remove dust mites, and c) produce many negative ions and thereby d) have numerous medical benefits supported by "hard science"; all with an intent to cause Plaintiff and Class members to believe that they could function as promised;

    c. Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

    d. Defendant caused Plaintiff and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

    e.   Defendant failed to reveal material facts to Plaintiff and the Class with the intent that Plaintiff and the Class members rely upon the omission;

    f.   Defendant made material representations and statements of fact to Plaintiff and the  Class that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

    g.   Defendant intended that Plaintiff and Class members rely on its misrepresentations and omissions, so that Plaintiff and the Class would purchase the Product they would not otherwise have purchased; alternatively, so that Plaintiff and Class members and would purchase the Products at a premium price based on its purported medical qualities rather than at a price commensurate with its value as decoration.

82. The foregoing deceptive acts and practices were directed at consumers.

83. Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

84.  Defendant's actions impact the public interest because Plaintiff and Class members were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendant's generalized course of deception.

85.  Plaintiff and other Class members seek to enjoin such unlawful, deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful, deceptive actions of Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise that the Products dehumidify the air, remove dust mites, and produce

many negative ions and thereby have numerous medical benefits supported by "hard science." Plaintiff TSVETTSIKH believed Defendant's representation that the Products would function as promised. Plaintiff TSVETTSIKH would not have purchased the Products had he known that they could not actually dehumidify the air, remove dust mites, and produce many negative ions and thereby have numerous medical benefits supported by "hard science".

86. Plaintiff TSVETTSIKH was injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as described herein. Plaintiff TSVETTSIKH paid for a products that could dehumidify the air, remove dust mites, ionize the air, safely treat depression, and provide "migraine headache relief, [e]nhance serotonin levels in the blood, reduce the severity of asthma attack, immune system enhancement, and reduce vulnerability to colds and flu" and also produce enough ions to improve human health, but did not receive such Products. The product he received was worth nothing because it did not have any of the alleged health benefits.

87. Plaintiff TSVETTSIKH and Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of all revenues and/or profits derived by Defendant from the Products, injunctive relief, enjoining Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under NY GBL § 349.

## COUNT II

### BREACH OF EXPRESS WARRANTIES

88.     Plaintiff TSVETTSIKH realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

89.     Plaintiff TSVETTSIKH brings this claim on behalf of himself and the other members of the Class for breach of express warranty under New York law.

90.     Defendant provided Plaintiff TSVETTSIKH and other members of the Class with written express warranties, including, but not limited to, a warranty that the Products dehumidify the air, remove dust mites, and produce many negative ions and thereby have numerous medical benefits supported by "hard science" The claims made by Defendant were an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise.

91.     Plaintiff TSVETTSIKH and other members of the Class placed importance on Defendant's claims about salt lamps' dehumidification, dust mite removal, and ionization capabilities, as well as Defendant's claims about ions' medical properties, in deciding to purchase the Products.

92.     Defendant breached its warranties by manufacturing, selling and/or distributing Products to consumers that is prominently labeled to dehumidify the air, remove dust mites, and produce many negative ions and thereby have numerous medical benefits supported by "hard science" but that cannot function as promised.

93.     Defendant previously knew or should have known of the falsity of its dehumidification, dust mite removal, and ionization and medical claims as manufacturer of the Product. Thus, Defendant had actual and/or constructive notice that its claims are false and to date has taken no action to remedy its breach of express warranty.

94.     Defendant previously knew or should have known of the falsity of its medical claims when it referred to studies about the properties of ions. Defendant knew or should have known that most of the medical benefits it advertises ionization as causing are not supported by those studies, and Defendant knew or should have known that the medical benefits found in those studies required much higher doses of ions than its Products can provide. Thus, Defendant

had actual and/or constructive notice that its claims about the implications of those studies are false and to date has taken no action to remedy its breach of express warranty.

95.     As a proximate result of Defendant's breach of warranties, Plaintiff TSVETTSIKH and the Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for products that did not conform to what Defendant promised in its promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on a product that did not have any value or had less value than warranted or a product that they would not have purchased and used had they known the true facts about it.

96.     As a result of the breach of these warranties, Plaintiff TSVETTSIKH and the Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate by the Court.

**COUNT III**

**NEGLIGENT MISREPRESENTATION**

97.     Plaintiff realleges and incorporate by reference the allegations contained in all preceding paragraphs and further allege as follows:

98.     Plaintiff brings this claim on behalf of himself individually, as well as on behalf of Class members under New York law.

99.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and Class members. Defendant has negligently represented that the Products dehumidify the air, remove dust mites, and produce many negative ions and thereby have numerous medical benefits supported by "hard science," when in fact, they do not.

27

100.     In making the representations of fact to Plaintiff and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above and to update Plaintiff following Defendant's failure to disclose. The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

101.     Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentation to induce the reliance of Plaintiff and Class members.

102.     Plaintiff and Class members relied upon these false representations and nondisclosures by Defendant when purchasing the Products, which reliance was justified and reasonably foreseeable.

103.     As a result of Defendant's wrongful conduct, Plaintiff and Class members have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## COUNT IV

### UNJUST ENRICHMENT
### (Pleaded in the Alternative)

104.     Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

105.     Plaintiff asserts this claim in the alternative in the event that the Court concludes that Plaintiff TSVETTSIKH lacks an adequate remedy at law.

106.    Plaintiff brings this claim individually, as well as on behalf of Class members. The focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of New York law are three fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted).

107.    At all times relevant hereto, Defendant deceptively labeled, marketed, advertised that the Products produce many negative ions and thereby have numerous medical benefits supported by "hard science" to Plaintiff and the Class.

108.    Plaintiff and the Class reasonably relied on Defendant's representations regarding the power of its Products and their medical properties, and in reasonable reliance thereon, purchased the Products.

109.    Plaintiff and Class members conferred upon Defendant non-gratuitous payments for the Products that they would not have due to Defendant's deceptive labeling, advertising, and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and Class members, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and Class members were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

110.    Defendant has been unjustly enriched in retaining the revenues derived from purchases of Defendant's Product by Plaintiff and the Class, which retention under these

circumstances is unjust and inequitable because Defendant misrepresented that the Products dehumidify the air, remove dust mites, and produce many negative ions and thereby have numerous medical benefits supported by "hard science" when they do not, which caused injuries to Plaintiff and Class members because they paid a price premium due to the mislabeling of the Products.

111.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and Class members under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

112.     In New York, unjust enrichment serves as a mechanism to reimburse defrauded consumers even when a product was purchased indirectly through a third party. (*See Waldman v. New Chapter, Inc*., 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010), (denying motion to dismiss unjust enrichment claim where plaintiff was not in privity with defendant); *see also Famular v. Whirlpool Corp*., No. 16 CV 944 (VB), 2017 U.S. Dist. LEXIS 8265 (S.D.N.Y. Jan. 19, 2017) ("New York law does not require plaintiff to have conferred a direct benefit on defendant to state a claim for unjust enrichment. Rather, the law requires only that the plaintiff's relationship with a defendant not be too attenuated") (internal quotations and citations omitted).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, seek judgment against Defendant, as follows:

a.   An Order that this action be maintained as a class action and appointing Plaintiff as representatives of the New York Class and/or such subclasses as the Court deems appropriate;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d. All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e. Actual and/or statutory damages for injuries suffered by Plaintiff and the Class in the maximum amount permitted by applicable law;

f. An order (i) requiring Defendant to immediately cease its wrongful conduct as set forth in this Complaint; (ii) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (iii) ordering Defendant to engage in a corrective advertising campaign; and (iv) requiring Defendant to reimburse Plaintiff and all Class members the amounts paid for the Product;

g. Statutory pre-judgment and post-judgment interest on any amounts;

h. Payment of reasonable attorneys' fees and costs; and

i. Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.


Dated: February 22, 2017

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*


By: _____*/s/ C.K. Lee*_____
         C.K. Lee, Esq. (CL 4086)